J. E. ALEXANDER v. SAMUEL H. CROSBY, Appellant.

**Personal injury:** DOGS: OWNERSHIP: EVIDENCE. The evidence in an action for damages sustained in a runaway, caused by a dog biting one of the horses, is held to authorize a submission of the issue as to whether defendant was the owner of the dog.

**Same:** INJURY BY DOG: LIABILITY OF OWNER: KNOWLEDGE OF VICIOUS HABITS. At common law to charge either the owner of a dog or one simply harboring him with liability for his injuries, it was necessary to show a knowledge of his vicious habits; but our statute changes the rule and makes the owner liable irrespective of such knowledge, while one simply harboring him is not liable unless a knowledge of his vicious habits is shown.

**Statutes imposing liability:** CONSTRUCTION. A statute creating liability will not be extended by judicial construction so as to include persons not designated or fairly within its terms.

*Appeal from Poweshiek District Court.*—HON. K. E. WILCOCKSON, Judge.

THURSDAY, FEBRUARY 18, 1909.

REHEARING DENIED SATURDAY, JUNE 5, 1909.

ACTION for damages resulted in a judgment against defendant, from which he appeals.—*Reversed.*

*Will C. Rayburn* and *S. H. Crosby,* for appellant.

*Boyd & Bray,* for appellee.

LADD, J.—The plaintiff drove his team down State Street in Grinnell, turning west on Fifth Avenue, and, after going a short distance, a dog, as is alleged, ran under the carriage and nipped the hind leg of one of the horses. It kicked over the tongue, striking the other horse, and the team ran away. The sufficiency of the evidence to sustain the finding that the dog bit the horse is challenged, but an examination of the record has convinced us that the issue was for the jury. So, too, the amount allowed as damages has such support in the evidence as to preclude interference by this court.

The defendant's wife testified that she owned the dog, bought and paid for it, took care of it, that it was kept at defendant's house on his premises, and that at her

1. PERSONAL INJURY: dogs: ownership: evidence.

request he had paid the taxes on it. Another witness testified that he had seen the dog with defendant on the street twice at least. Plaintiff testified that in talking to him defendant referred to it as "my dog," and he alluded to it in the same way as a witness at the trial. This evidence was sufficient to carry to the jury the issue as to whether defendant was owner of the dog.

The court, however, instructed "that if the defendant Crosby had the dog in his possession, and he had kept the dog on his premises, and kept him as owners usually do keep their dogs and that he was following him on the public streets, and he claimed to own the dog, then he is owner of the dog in law and in so far as this action is concerned."

At the common law one who harbored a dog knowing him to be vicious, as well as the owner in possession, was liable for the injuries committed by him (*Marsel v. Bowman,* 62 Iowa, 57), and the rule as thus stated still obtains in this State (*Sanders v. O'Callaghan,* 111 Iowa,

574). There is some difference of opinion as to the ground of liability at the common law. As put in *Quilty v. Battie,* 135 N. Y. 201 (32 N. E. 47, 17 L. R. A. 521): "A vicious domestic animal, if permitted to run at large, is a nuisance, and the person who knowingly keeps or harbors it, and thus affords it a place of refuge and protection, is liable for the maintenance of a nuisance and all the damages directly resulting therefrom." Mr. Cooley, in his work on Torts, says that: "According to the great preponderance of authority in a suit for injuries by a vicious animal, the gist of the action is not negligence in keeping the animal, but the keeping with knowledge of his vicious propensity. According to these authorities one having such knowledge keeps such an animal at his peril and must respond for any damages done by the animal irrespective of negligence on his part." In *Hayes v. Smith,* 62 Ohio St. 161 (56 N. E. 879) it is said that the "gist of such an action as this is not the keeping of the dog with knowledge of his dangerous nature, but rather the negligent failure to restrain the animal and to keep him so safely that he may not injure any one who is lawfully at the place." And this appears to be the view of several other courts. *Fake v. Addicks,* 45 Minn. 37 (47 N. W. 450, 22 Am. St. Rep. 716); *De Gray v. Murray,* 69 N. J. Law, 458 (55 Atl. 237); *Worthen v. Love,* 60 Vt. 285 (14 Atl. 461); *Parsons v. Manser,* 119 Iowa, 88. For present purposes it is not necessary to determine upon which ground liability in such a case should be based. The liability for such trespasses is imposed not because of ownership, but because of possession and the duty to care for the animals. 2 Cooley on Torts, 690. There was no evidence in this case tending to show knowledge of the evil propensities of the dog, and so at the common law the defendant would not have been liable at all.

But section 2340 of the Code provides that: "It

*2. SAME: injury by dog: liability of owner: knowledge of vicious habits.*

shall be lawful for any person to kill any dog caught in
the act of worrying, maiming, or killing any sheep or
lamb or other domestic animal or any dog attacking or
attempting to bite any person, and the owner shall be
liable for all damages done by his dog, except when the
party is doing an unlawful act." It will be noted that
two changes from the common law are involved in this
statute: (1) The "owner" alone is made liable, and (2)
proof of *scienter* is dispensed with. The word "owner"
is not of technical significance and is to be construed ac-
cording to the context and approved usage of the language.
Section 48, Code. As employed in this statute it evidently
signifies the person to whom the dog legally belongs, for
under the modern decisions the dog is recognized as a
species of property. See *Anson v. Dwight,* 18 Iowa, 241;
*Moore v. Charlotte E. Ry., L. & P. Co.,* 136 N. C. 554
(48 S. E. 822, 67 L. R. A. 470). This appears to have
been the view of this court in the earlier cases. Thus
in *O'Hara v. Miller,* 64 Iowa, 462, the jury had been in-
structed that, "if the defendant had the dog in his pos-
session, and was harboring him on his premises as owners
usually do with their dogs, then he is owner within the
meaning of the law." This instruction was approved on
the ground that the matter recited constituted satisfactory
evidence of ownership and with the declarations thereof
established the fact that the dog belonged to defendant. In
*Shultz v. Griffith,* 103 Iowa, 150, the court noted that
owners only were made liable by statute, but applied the
rule of the above decision in saying that possession and
harboring as owners usually do was sufficient evidence of
ownership. In *Trumble v. Happy,* 114 Iowa, 624, the
petition alleged knowledge of the vicious propensities of
the dog, which the evidence tended to show; but the court
instructed that one who harbors a dog in law is the owner.
This court held that numerous errors had been committed
in the course of the trial, and, among them, the refusal

to submit two special interrogatories to the jury, one as to the ownership and the other as to harboring with defendant's consent, and also that certain instructions were erroneous even if it were conceded that the "harboring of the dog as owners usually do is sufficient to bring the case within the statute making owners liable for damages." An instruction, however, was held to have been properly refused which in effect told the jury that the defendants were not liable unless they had knowledge of the mischievous tendencies of the dog. No reference was made to the statute aside from this expression, and nothing in other decisions indicates a construction of the word "owner" as including those who may harbor dogs. In *Burch v. Lowary,* 131 Iowa, 719, the husband owned the dog, but the wife the premises, and the court held that the husband is the head of the family and determines the place of residence. The wife in that case could not be charged with harboring "as owners usually do" and was not liable under the statute. In the course of the opinion it was conceded that "owner," as occurring in the statute, is not to be taken in the technical sense in which it is commonly used. The instruction in *O'Hara v. Miller, supra,* was quoted as the language of this court, and *Trumble v. Happy, supra,* cited. No more was decided, however, than that the evidence did not show the wife to have been harboring the dog, though the opinion proceeds, as did the briefs of counsel, upon the theory that she would have been liable had she harbored him.

A statute creating a liability which did not exist before ought not to be so extended as to include others than those designated or fairly within its terms. Though enacted to remedy an evil, the Legislature in doing so may well have had in mind the difference in situation of an owner and one who merely harbors. The owner may be assumed to be familiar with the nature of his animal, and, if he elects to

3. STATUTES
IMPOSING
LIABILITY:
construction.

retain a dog whose manners are such as are likely to be corrupted by listening to the "call from the wild," this may well be at his own risk; but to charge one who does no more than furnish shelter to a wanderer and food to the stranger at his gate without knowledge of the bad character of his guest and render him liable might well be thought an ungracious recompense for kindness to "man's best friend." Regardless of whether the distinction suggested had controlling influence with the lawmakers, however, the statute dispenses with proof of knowledge of the mischievous propensities of the dog only in case of the owner, and, to render one who merely harbors a dog liable for injury done by it, previous knowledge of his vicious character is essential to recovery.

Because of the error in the instruction, the judgment is *reversed*.