**IN THE COURT OF APPEALS OF IOWA**

No. 12-1934
Filed March 26, 2014

TERESA MARIE BURT, As Mother and
Next Friend of SALEM PAUL BAKER,
and TERESA MARIE BURT, Individually,
        Plaintiffs-Appellees,

vs.

ANTHONY R. MILLER,
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, George L.

Stigler, Judge.


        Defendant appeals the judgment against him in a tort suit arising from a

dog bite.  **AFFIRMED.**


        Anthony R. Miller, Waterloo, appellant pro se.

        Carter Stevens of Roberts, Stevens, Predergast & Guthrie, P.L.L.C.,

Waterloo, for appellee.


        Considered by Vogel, P.J., McDonald, J., and Huitink, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**HUITINK, S.J.**

Defendant appeals the judgment against him in a tort suit arising from a dog bite. Iowa Code section 351.28 (2009) imposes strict liability to the owner of a dog for damages done by the dog. We conclude that under section 351.28 the district court properly assigned one hundred percent of the fault to defendant, who was the owner of the dog. The owner's knowledge of a dog's propensity to be vicious is not an essential element of claims against dog owners. Other issues raised by defendant on appeal have not been preserved for our review. We affirm the decision of the district court.

### I. Background Facts & Proceedings.

Anthony Miller owned a home in Waterloo, Iowa, where he lived with his son, Roger, and a pitbull dog. A friend, Douglas Baker, was also staying with him. Douglas's son, Salem Baker came to visit him every other weekend. On May 23, 2009, Salem, who was then eleven years old, was spending the weekend at Miller's home. While Salem was petting the dog that evening, it nipped at his hands. No injury occurred at that time.

Salem stated that when he came downstairs in the morning on May 24, 2009, the dog started barking at him. The dog chased him, he tried to run away but tripped, and the dog bit him on the leg. Douglas, who was in the house, got the dog off of Salem. Miller and Roger were outside at the time. Salem required medical treatment for the dog bite. Miller subsequently had the dog put down.

Salem's mother, Teresa Burt, filed a tort action against Miller as mother and next friend of Salem and individually, claiming Miller was negligent and as a result Salem suffered serious injuries. Miller represented himself in the lawsuit.

He signed requests for admissions stating he was the owner of the dog and Salem suffered injuries as a result of the dog bite. In answers to interrogatories, Miller stated he owned the home where the incident took place. Additionally, Miller stipulated that the medical bills presented by plaintiffs were fair and reasonable for the treatment of Salem's injuries caused by the dog bite.

The case proceeded to a trial to the court on October 8, 2012. Salem testified he was in the hospital sixteen days. He had five surgeries on his leg, including a skin graft. He still walks with a limp and cannot stand for long periods of time. Salem stated he was unable to participate in sports with his friends. Burt stated Salem was embarrassed to have people see his leg. Salem's grandmother testified Salem had become afraid of dogs. Evidence was presented that Salem had medical bills of $54,655.04. There was a Medicaid adjustment of $34,866.83 and a Medicaid payment of $19,788.21.

The district court entered a decision finding Miller was one hundred percent at fault. The court determined Miller was negligent in that he failed to maintain control of his dog knowing the reputation of pitbulls and knowing the dog had nipped at Salem's hands the night before. The court assessed damages of $54,655.04 for past medical expenses; $25,000 for past pain and suffering; $5000 for future pain and suffering; $20,000 for loss of body; and $10,000 for future loss of body. The court awarded Burt $10,000 for past loss of consortium and $1000 for future loss of consortium. In total, judgment was entered against Miller for $125,655.04, plus interest. Miller appeals the decision of the district court.

## II.  Standard of Review.

Tort actions are tried at law, not in equity.  *Kreamer v. Coll. of Osteopathic Med.*, 301 N.W.2d 698, 700 (Iowa 1981).  In cases tried at law, our review is for the correction of errors at law.  Iowa R. App. P. 6.907.  "When a party challenges the sufficiency of the evidence to support the factual findings made by the district court in a bench trial, we must examine the record for substantial evidence in support of the challenged findings."  *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 179 (Iowa 2004).

## III.  Merits.

**A.**  In his pro se appeal, Miller raises several constitutional issues that were not raised before the district court.  "[W]e require error preservation even on constitutional issues."  *State v. Mulvany*, 600 N.W.2d 291, 293 (Iowa 1999).  Because this issue was not presented to nor decided by the district court, we conclude it has not been preserved for our review.  *See O'Hara v. State*, 642 N.W.2d 303, 314 (Iowa 2002).  Therefore, we do not address Miller's constitutional claims.

**B.**  Miller challenges the district court's finding that he was one hundred percent at fault.  He points out that Douglas was living at the property at the time and was inside the house, while Miller was outside.  Miller asserts the court's allocation of fault is not supported by the evidence.

Iowa Code section 351.28 provides:

> The owner of a dog shall be liable to an injured party for all damages done by the dog, when the dog is caught in the action of worrying, maiming, or killing a domestic animal, or the dog is attacking or attempting to bite a person, except when the party damaged is doing an unlawful act, directly contributing to the injury.

This section does not apply to damage done by a dog affected with hydrophobia unless the owner of the dog had reasonable grounds to know that the dog was afflicted with hydrophobia and by reasonable effort might have prevented the injury.

Section 351.28 imposes strict liability to the owner of a dog for damages done by the dog. *Fouts ex rel. Jensen v. Mason*, 592 N.W.2d 33, 36 (Iowa 1999). A plaintiff may establish ownership by showing (1) the dog was in the defendant's possession and (2) the defendant was harboring the dog on the defendant's premises as owners usually do with their dogs. *Id.* at 37. A person having temporary care of a dog, such as a groomer, does not become the owner of the dog. *Collins v. Kenealy*, 492 N.W.2d 679, 682 (Iowa 1992). In a request for admissions, Miller admitted he was the owner of the dog that attacked Salem.

The only defenses to the strict liability imposed on dog owners are found in the statute; contributory negligence is not a defense. *Id.* Miller's claims that Douglas should share a portion of the fault is not supported by the law. *See id.* We note there are no allegations that Salem was doing an unlawful act at the time he was attacked by the dog or that the dog had hydrophobia. *See* Iowa Code § 351.28. We conclude that under section 351.28 the district court properly assigned one hundred percent of the fault to Miller, who was the owner of the dog.

**C.** Miller claims there is not sufficient evidence in the record to support the district court's findings that the dog nipped at Salem's hands the evening before the dog bit him. He also questions Salem's testimony, "I think he [Miller] just put it in another room or something like that I think."

The owner's knowledge of a dog's propensity to be vicious is not an essential element of claims against dog owners. *Steinkuehler v. Brotherson*, 443 N.W.2d 698, 700 (Iowa 1989). "Our cases under [section 351.28] have held legal dog owners absolutely liable, regardless of whether or not the owner was negligent or had knowledge of the dog's vicious propensity." *Collins*, 492 N.W.2d at 682. The issue of whether the dog nipped at Salem's hands the night before and whether Miller knew of it is therefore not relevant to the issue of whether Miller is strictly liable for injuries caused by the dog's attack. We do not address this issue further.

**D.** Finally, Miller contends the amount of past medical expenses awarded to plaintiffs is not supported by the evidence. He claims that while plaintiffs presented medical bills of $54,655.04, they received a Medicaid adjustment of $34,866.83 and a Medicaid payment of $19,788.21, leaving only three dollars uncovered.[1]

Section 351.28 makes the owner of a dog liable for damages "done by" the dog. *Hagen v. Texaco Ref. & Mkting, Inc.*, 526 N.W.2d 531, 537 (Iowa 1995). "This language implicitly requires a causal connection between the animal's actions and the damages sought by the plaintiff." *Id.* Miller signed a stipulation, "That medical bills and summary of treatment incurred herein were within a reasonable degree of medical certainty proximately caused by the dog bite on or about May 24, 2009," and "That said bills are fair and reasonable and

---

[1] According to our mathematical calculations, the medical bills of $54,655.04, less the Medicaid adjustment of $34,866.83 and Medicaid payment of $19,788.21 leaves an amount of zero.

medically necessary." Therefore, Miller has agreed there was a causal connection between the dog's actions and Salem's past medical expenses.

The issue Miller raises on appeal appears to be whether plaintiffs may recover the full amount of Salem's past medical expenses when those expenses were covered by Medicaid. This issue was not raised before the district court. We conclude it has not been preserved for our review and do not address it. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

We affirm the decision of the district court.

**AFFIRMED.**